UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA,**

    Plaintiff,                CASE NO.: 19-20624-CR-**SINGHAL**

    -vs-

**YUDEL GONZALEZ**,

    Defendant.

_____/

## DEFENDANT'S MOTION FOR DOWNWARD VARIANCE AND/OR DEPARTURE FROM THE SENTENCING GUIDELINES BASED ON HIS <u>PERSONAL HISTORY AND/OR PERSONAL CHARACTERISTICS</u>

**COMES NOW** the Defendant, **Yudel Gonzalez**, by and through his undersigned counsel and files the following Motion in support of a Downward Variance and/or Departure pursuant U.S.S.G. §5H1.6, Application Note (B), and the 18 U.S.C. §3553(a) factors. In light of Mr. Yudel Gonzalez's extraordinary family circumstances, he respectfully submits that the recommended Guideline sentence herein is unduly punitive and a Downward Variance and/or Departure is necessary to serve the aims of 18 U.S.C. §3553(a), and for the Court to impose a sentence "sufficient, but not greater than necessary" in order to achieve individual accountability and just punishment under the unique facts of this case. **See**, **<u>United States v. Irey</u>**, 612 F.3d 1160 (11th Cir. 2010).

The United States Sentencing Guidelines, formerly mandatory, now serve as one factor, among several, courts must consider in determining an appropriate sentence. **Kimbrough v. United States**, 128 S.Ct. 558, 564 (2007); **see also Gall v. United States**, 128 S. Ct. 586, 602 (2007). As modified by **Booker**, §18 U.S.C. 3553(a) contains an overarching provision instructing district courts to impose a sentence sufficient, but not greater than necessary, to achieve the goals of sentencing. **Kimbrough**, 128 S. Ct. at 570. Those purposes are: the need for the sentence  imposed: A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; B) to afford adequate deterrence to criminal conduct; C) to protect the public from further crimes of the defendant; and D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §3553(a)(2).

In making this determination, the court must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the Guideline range and any comments thereto, the need to avoid unwarranted sentence disparities, and the need to provide restitution to any victims. 18 U.S.C. §3553(a).

To this end, a sentencing judge must independently evaluate the appropriate sentence not only in light of the purposes and factors of §3553(a), but also in

consideration of arguments that the Guidelines sentence itself fails properly to reflect §3553(a) considerations. **Rita v. United States**, 127 S. Ct. 2456, 2465 (2007). In evaluating such an argument, the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply. *Id.*; **Nelson v. United States**, 129 S. Ct. 890, 892 (2009) (reversing Fourth Circuit's ruling that within-Guidelines sentences are presumptively reasonable.).

Courts, once again, have increased discretion in sentencing defendants and can substantially reduce unwarranted disparities while achieving somewhat more individualized justice. See **United States v. Crosby**, 397 F.3d 103, 114 (2nd Cir. 2005). In the instant case, there are several factors that warrant a downward variance from the 30 to 37 months guidelines range agreed upon by the parties after a prolonged period of time of back and forth conversations to finally agree on the above guideline range which allowed Mr. Yudel Gonzalez to argue personal characteristics for Variance and/or Departure of the guideline range; and much more so from the guideline range of 63-78 to months as calculated by Probation.

**History and Characteristics of Yudel Gonzalez**

Yudel Gonzalez is a 36 year old Hispanic male. Originally from Cuba and born in humble circumstances, Yudel was raised under low socioeconomic conditions. He is the only child born to the union of his parents. His father died when Yudel was six (6) years of age. Yudel moved to the United States when he

was 18 years of age, to join his Mother who was already living in the United States. Yudel has lived in Miami, Florida, for the past eighteen (18) years and lives with his Mother and with his common-law-wife and their two (2) year minor child. Yudel has been in a relationship with Jessica Ponce De Leon for three (3) years. They have one child, Bella, who is two (2) years of age. Yudel also has a three (3) year old little girl from a prior relationship.

His common-law-wife Jessica will testify and tell the Court that Yudel is a wonderful Father and significant other. That Yudel is the backbone of the family; that she is unemployed and that without Yudel's financial assistance she does not know what will happen to her and to her baby.

 






 

 



As the Court will see, there is more to Yudel Gonzalez than the PSI could possibly cover:

- "Yudel is the backbone of our family.  Yudel is a great father and a good human being, who has a heart of gold.  Yudel dedicates the little free time he has from work to our little girl.  Yudel is truly remorseful for having committed this crime.  Yudel is the sole bread winner in their home; and that she does not have the economic resources to care for their baby; and that she does not even know what she and their baby will do without Yudel.

**– Jessica Ponce de Leon, common-law-wife of 3 years.**

- "Yudel is a true friend that is always there when needed.  Yudel is very devoted to his family and Yudel is very involved in his role as a father, whether financially or otherwise.  That he has always known Yudel as the rock and provider for his family.  That Yudel is deserving of a second opportunity.

**– Hadrian Rodriguez, Friend for 15 + years.**

- "My opinion of Yudel Gonzalez is the best, I have no words to describe how many virtues and qualities he has, I feel lucky to have a friend like him, he is a correct, calm person, good friend, good father, hard worker, loves his family, he is always there when you need him, he is someone worth admiring and respecting.  I think that in this society we are living in there are few people with the values and qualities of Yudel."

**– Maylen Mancebo, friend of 7+ years.**

Yudel's decision to become involved in this offense was illegal and wrong. However, for the past five and a half (5.6) years Yudel has completely turned his life around, and has been a productive member of society.  For the past five and a half (5.6) years, Yudel has dedicated his life to making sure that he does the right thing for his family. Yudel is the only person who is gainfully employed in his

household.  Yudel works hard, including working overtime in order to provide for the household; and spends whatever hours he can with his family, ensuring that his child gets the best of his time, love and attention.  His common-law-wife is not employed outside the home and her primary role is caring for their two (2) year old baby.  As the sole bread-winner in his immediate family, Yudel is an indispensable and irreplaceable head of the household.  Without Yudel's financial support his common-law-wife Jessica and his little baby Bella will not have a place to live; and will have to resort to obtaining public assistance just to eat.  These extraordinary family circumstances warrant a downward variance.

In **United States v. Anderson**, 267 Fed. App'x 847 (11th Cir. 2008) the court affirmed a sentence of probation with home-confinement for white collar defendant where Guidelines were 18 to 24 months and prosecutor was requesting 18 month sentence, explaining that under Gall, district courts had wide discretion at sentencing.

In **United States v. Rowan**, 530 F.3d 379 (5th Cir. 2008) the court affirmed a sentence of five years supervised release for a defendant convicted of possession of child pornography where Guidelines were 46 to 57 months, finding that such sentence was not unreasonable under **Gall**.

In **United States v. Bueno**, 549 F. 3d 1176 (8th Cir. 2008) a case where the defendant possessed more than 70 kilograms of cocaine, the court affirmed a

sentence of probation with house arrest for five years, where Guidelines were 108-135 months, noting that "'offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty...and the district court observed in this case Bueno is subject to house arrest during the entire five-year period of probation.

In **United States v. Whitehead**, 532 F. 3d 991 (9th Cir. 2008) the court held that the district court did not abuse discretion when it sentenced the defendant to probation with substantial amount of community service and house arrest where the defendant was convicted of supplying counterfeit access cards causing loss of $1 million dollars and guidelines range was 41-51 months.

The Second Circuit has approved downward variances based upon extraordinary family circumstances. **See United States v. Jones**, 460 F.3d 191 (2nd Cir. 2006) (15 month variance reasonable based on education, emotional condition, favorable employment record, family support and good record on State probation). In **United States v. Galante**, 111 F.3d 1029 (2nd Cir. 1997), the Court approved a downward departure from 46-57 months incarceration down to 24 months home detention based upon the extraordinary family circumstances. *Id.* at 1030. **Galante** was in a stable marriage, had two children ages 8 and 9 and took a very active role in his children's lives.

*Post-Booker,* this Court can use the same reasons used by the Court in **Galante** to justify a downward variance for Yudel herein. The Court compared the case to the decisions made in **United States v. Johnson**, 964 F.2d 124, 129 (2nd Cir. 1992) and **United States v. Alba**, 933 F.2d 1117, 1122 (2nd Cir. 1991) and found that similar to **Galante**, "the reduction or elimination of time to be served in prison permitted the defendants to continue to discharge their existing family responsibilities, avoided putting the families on public assistance and spared traumatizing the vulnerable emotions of defendants' children.

In this case, only Yudel works and Jessica is a stay at home Mom; and all of their income comes from Yudel's employment income.  Jessica and his small daughters will suffer if Yudel is incarcerated for a prolonged period of time. Jessica is not working and even if she was able to find a minimal wage paying job, such wages would not be enough to pay for rent and support for herself and Bella. Additionally, Jessica does not have anyone who can take care of her minor child. Jessica's Mother suffers from a medical condition that has left her with practically no strength in her hands and wrists ruling her out as a possible baby sitter because due to her medical condition she is unable to safely pick up or lift Bella if the need were to arise.  (See copy of letter on Jessica Mother's condition from her Doctor which is attached hereto as Defendant's Exhibit "A"**).**

Under the unique facts of this cause, the people who would really suffer if Yudel were to be sentenced for an extended period of time are Yudel's common-law-wife and most especially his children. A prolonged period of incarceration would require Jessica to apply for government assistance.

This Court can take into consideration the consequences of Yudel's prolonged incarceration from an economic standpoint and grant a downward variance.  **See Galante** at 1037 (economic condition of defendant's family not improperly considered). (economic condition of defendant's family not improperly considered).

### Post-Crime Rehabilitation  and Risk of Re-Offending

The Supreme Court in **Gall v. United States**, 128 S. Ct. 586, 600-01, held that post-crime rehabilitation is an acceptable basis for a downward variance. In **Gall**, the Court found that the rehabilitation of Gall was genuine because it took place prior to his arrest on the charges, thereby demonstrating that his behavior was not done solely for purposes of preparing sentencing mitigation. *Id.;* **See also United States v. Clay**, 483 F.3d 739, 745 (11th Cir. 2007) (variance from guideline range of 188-235 months down to 60 months upheld based upon post-crime rehabilitation); **United States v. Halaska**, 2009 WL 1090701 (S.D.Ill. 2009) (granting a 51 month downward departure for post-crime rehabilitation prior to Indictment); and **United States v. Cherry**, 487 F.3d 366, 369-70 (6th Cir. 2007)

(granting 43% downward variance from the guideline range where the defendant presented a low risk to reoffend).

Yudel made a grave error in judgment in participating in the conspiracy charged in this case. In 2013 Yudel was going through a difficult time finding legitimate employment due to the different Night Clubs that he was working as a DJ at started closing down one business entity after the other. During this period of time in his life, Yudel was unable to obtain gainful employment and was going through financial difficulties in providing for his family. At that time, Yudel fell prey to the lure and temptation of a woman whom he called and considered to be an "Aunt" who lured him into committing this crime by letting Yudel believe that she was a law abiding person and that her money, businesses and properties were totally legitimate. (Attached hereto as Exhibit "B" is a copy of a Polygraph Examination Result of Yudel which corroborate the above and reflect that Yudel did not know that the check his "AUNT" provided to him derived from health care fraud). The "AUNT" informed Yudel to create a Corporation and that she would provide him with checks from her businesses for him to deposit into the bank account of the Corporation, for him to keep ten (10%) of the money and return to her or to her daughter, in cash, the balance of the money.

Trusting his "AUNT', Yudel fell hook, line and sinker and did as she instructed of him; and he became involved in the conspiracy to cash the checks

provided to him by and/or through his Aunt.  His "Aunt" gave Yudel the money to open the first corporation; gave him the name to use for the Corporation; gave him the name of the attorney to contact to open the Corporation; and provided Yudel the money needed to pay the attorney for his services and for recording the Corporation.

A little over seven (7) months after opening the first Corporation, the "Aunt" instructed Yudel to contact the same attorney to open a second corporation and provided Yudel with the new name for the second Corporation.  On that occasion, she told Yudel to use his own money to pay for the expenses of opening said Corporation, and he did as instructed.

Yudel was involved in the conspiracy for about fifteen (15) months, more or less.

Yudel was arrested in this case in September, 2019.  From January 2015 to the time of his arrest herein more than four and a half (4.6) years had passed; and during that four and a half (4.6) year period, Yudel had been continuously gainfully employed and living a law abiding life.

For the more than five and a half (5.6) years following his involvement in the conspiracy, Yudel has changed his life around; he has been gainfully employed; he has been living a crime free life and he has rehabilitated himself. Yudel has spent the last five and a half (5.6) years working hard to provide for his

family working as a DJ at a Male club.  Additionally, upon being released on bond on this case, his employers permitted and allowed Yudel to continue working as a DJ at their business establishment which is reflective of the new, law abiding man that Yudel has become through hard work, commitment, sacrifice and dedication; and working all overtime hours that he is given so that he can provide for his family.

One of the aims of incarceration is rehabilitation, but here, rehabilitation has already occurred.

In addition to his rehabilitation, Yudel is at low risk for recidivism. He is a first-time non-violent offender, who has been in a relationship with the mother of his minor child for three (3) years and has stable employment.  The Sentencing Commission's reports on who recidivates puts Yudel in the lowest risk factor, with almost no chance of committing future crimes.  Aside from this case, Yudel has never been arrested in his life.

*See, The Criminal History Computation of the Federal Sentencing Guidelines, Recidivism and the "First Offender*," and *U.S. Parole Commission Salient Factor Score*, all found at www.usssc.gov/research.html. Specifically, these reports show that:

- Recidivism rates decrease with age and educational level. *Criminal History Computation* at 12-13.

- Stable employment, marriage and children are all associated with lower recidivism; *Id.* at 12.

- Defendants are more likely to recidivate when sentenced to straight prison, as opposed to probation or split sentences. *Id.* at 13.

Further, there is evidence that prison exposes less serious offenders to more serious ones, thus leading to increased recidivism.   *See* Lynne M. Veraitis, Tomaslav V. Kovandzic, Thomas B, Marvel, *The Criminogenic Effects of Imprisonment: Evidence from State Panel data 1974-2002*, 6 Criminology & Public Policy 589 (2007).  Limiting Yudel's exposure to more serious offenders is a factor to take into consideration.

According to data provided by the Sentencing Commission, judges are now somewhat more likely to consider family circumstances when issuing a lenient sentence.  But even if family circumstances contribute to the sentence reduction, they are typically not the sole motivator.

In addition, sentencing law's overarching goal of uniformity may be at odds with the competing interests of specific third parties, often children.   Judge Weinstein articulated this tension by explaining that "the punishment of the parent may so adversely affect the innocent child that punishment of one is in practical effect punishment of both," and by adding that this problem is "especially true of

the adverse psychological effects of deprivation of a parent's presence during the initial years of development."

This perspective implicates the just deserts principle of sentencing and would urge judges to balance the need to punish an offense in a consistent manner with the imperative of avoiding unnecessary harm to innocent third parties.  **See**, Jack B. Weinstein, The Effect of Sentencing on Women, Men, the Family, and the Community, 5 COLUM. J. GENDER & LAW 169, 176 (1996).  **See also**, DAN MARKEL ET AL., PRIVILEGE OR PUNISH: CRIMINAL JUSTICE AND THE CHALLENGE OF FAMILY TIES (2009), "[T]he fact that offenders do not 'deserve' sentencing discounts in an abstract sense does not mean that accommodations should never be made ...Incarcerating a defendant with significant family responsibilities unquestionably imposes tremendous costs on innocent family members, and those costs are most severe when the defendant is an irreplaceable caregiver to vulnerable family members.").

Yudel's two year old daughter and his common law Wife will be left out in the streets and homeless if Yudel is taken away from them.  Yudel has learned a hard lesson in life by trusting people, specifically a woman that he considered to be his "AUNT" who recruited and lured him into becoming involved in this crime, yet Yudel has turned his life around and has become a law abiding citizen and has

rehabilitated himself.  Under the unique circumstances of the facts of this case, a downward variance is respectfully requested.

## CONCLUSION

Yudel Gonzalez requests this Honorable Court to grant this Motion for Downward Variance and/or Departure from the Guidelines.  In this case, an alternative sentence, i.e., a sentence of home detention so that Yudel can continue to work, support his family and be present to help and guide his minor children in their formative years; with an extended period of Supervised Release, and community service hours is sufficient *but not greater than necessary* to meet the aims of punishment for Yudel Gonzalez.  This Court has the power and discretion to fashion a sentence that better serves and protects the psychological welfare and wellbeing of his two innocent minor children vis-à-vis Yudel losing his liberty.  Incarceration in accordance with the Guidelines might well result in the destruction of an otherwise strong family unit.

Respectfully submitted,

**BATISTA & BATISTA, P.A**.
Attorneys for the Defendant
7171 Coral Way,  Suite 400
Miami, Florida  33155
Telephone: (305)  267-5139
Facsimile:   (305) 267-4108
E-mail:  Jrebatistalaw@gmail.com

By:   **/s/  Jose' R.E. Batista**
**Jose' R.E. Batista, Esq.**

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed

with the Clerk of Court using **CM/ECF**; on this 12th day of October, 2020.

**/s/  Jose' R.E. Batista**
**COUNSEL**